NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 86

No. 2017-344

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Essex Unit, |
| | Criminal Division |
| | |
| Ronald Dupuis | January Term, 2018 |

Elizabeth D. Mann, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellant.

Kyle L. Hatt of Sleigh Law, St. Johnsbury, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **ROBINSON, J.**   In State v. Kirchoff this Court held that Chapter I, Article 11 of the Vermont Constitution protects against warrantless searches of "open fields" when the landowner objectively demonstrates his or her intent for privacy through actions such as posting "no trespass" signs. 156 Vt. 1, 10, 587 A.2d 988, 994 (1991). This case now calls on us to examine whether Article 11 provides the same protection when the warrantless search is for the purpose of enforcing hunting laws and the landowner has not strictly abided by Vermont's regulations for posting against hunting. The State appeals from the trial court's grant of defendant Ronald Dupuis's motion to suppress evidence arising from a game warden's warrantless search of his property, arguing that because defendant's "no trespass" postings did not comport with Vermont's hunting posting statute, he enjoyed no expectation of privacy. We disagree and affirm.

¶ 2.     Defendant was charged with taking big game by illegal means as well as baiting and feeding deer.  He filed a motion to suppress the evidence on which the charge was based.  After an evidentiary hearing, the trial court made the following findings.  On dates in September, October, and November 2016, a game warden with the Vermont Department of Fish and Wildlife hiked by foot onto a forested portion of defendant's land in the town of Bloomfield.  The warden entered through a neighboring property approximately one mile up a steep hillside thick with blowdowns (described as harsh conditions extremely difficult to navigate) until he came to an ATV trail.  He purposefully took this circuitous route to evade detection.  The warden followed the trail until he came upon a blind built of timber at ground level with a salt block, apples, and acorns placed nearby.

¶ 3.     Although the warden testified that he saw no signs posted, defendant and others testified, and the trial court found, that defendant had posted between twenty-five and thirty signs stating "no trespassing" or "keep out" around the perimeter of his property, located approximately 100 to 150 feet apart.  A gate with multiple "no trespassing" signs blocked the main entrance onto defendant's property.[1]  There was no evidence that the game warden had a warrant or suspicion of criminal activity at the time he entered defendant's land.

¶ 4.     The trial court granted defendant's motion to suppress evidence obtained from the warden's warrantless search, ruling that it violated Chapter I, Article 11 of the Vermont Constitution.  The court held that by posting his land to the extent that he had, defendant "took the steps necessary to clearly communicate to the reasonable person that the public was excluded from his Bloomfield property," thereby preserving his expectation of privacy.  See Kirchoff, 156 Vt. at 10, 587 A.2d at 994.  The court explained that the warden had not observed the signs because he took an abnormal course to reach defendant's property and therefore did not have the vantage point

---

[1]  Although the trial court made no findings on this point, the warden testified that he had checked with the Bloomfield town clerk before conducting his patrol in September 2016, and, at that time, defendant had not recorded his land as posted against hunting.

2

of the reasonable person under the test this Court established in <u>Kirchoff</u>. In so holding, the court rejected the State's argument that defendant lacked an expectation of privacy because he had not complied with Vermont's statute for posting against hunting. See 10 V.S.A. § 5201. The trial court granted the State's motion for interlocutory appeal pursuant to V.R.A.P. 5(b)(3).

¶ 5. On appeal, the State argues: (1) defendant did not effectively post his property to exclude hunters and thus he had no expectation of privacy relating to the regulation of hunting; and (2) the trial court erred in holding that the path that the warden took onto defendant's property prevented him from having the vantage point of a reasonable person.

¶ 6. We review the trial court's factual findings in connection with a motion to suppress with deference. <u>State v. Williams</u>, 2007 VT 85, ¶ 2, 182 Vt. 578, 933 A.2d 239 (mem.). In this case, the State only challenges the trial court's legal conclusions, which we review without deference. <u>Id</u>. The foundation of our analysis rests on the constitutional requirement that police get a warrant before searching most private property. That this requirement can apply to open fields when a property owner has taken sufficient steps to exclude others is well established. For the reasons set forth below, we reject the State's suggestion that the Vermont constitutional provisions concerning hunting, fishing, and trapping create an exemption to the warrant requirement for game wardens investigating hunting violations on private property. We further conclude that the trial court did not err in holding that the warden's vantage point was not that of a "reasonable person" because of the manner in which the warden entered the property.

I. Article 11 and Open Fields

¶ 7. The starting point for our analysis is Chapter I, Article 11 of the Vermont Constitution—Vermont's counterpart to the Fourth Amendment to the U.S. Constitution—which states:

> That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize

3

any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

Article 11 shields against "unreasonable government intrusions into legitimate expectations of privacy." State v. Bryant, 2008 VT 39, ¶ 10, 183 Vt. 355, 950 A.2d 467 (quotation omitted). A central precept to Article 11 is the requirement that law enforcement receive a warrant before entering private property; warrantless searches are presumptively unreasonable. Id.; see also State v. Medina, 2014 VT 69, ¶ 13, 197 Vt. 63, 102 A.3d 661 ("Warrantless searches are . . . per se unreasonable."); State v. Morris, 165 Vt. 111, 115, 680 A.2d 90, 93 (1996) ("The first and foremost line of protection is the warrant requirement."). And while some warrantless searches are permissible, any exception to the warrant requirement "must be jealously and carefully drawn." State v. Savva, 159 Vt. 75, 85, 616 A.2d 774, 779 (1991) (quotation omitted). Hence, under Article 11, the warrant requirement reflects "the balance reached by the constitutional drafters, a balance in which the individual's interest in privacy outweighs the burdens imposed on law enforcement, such that those subjected to searches must be protected by advance judicial approval." Id. at 85-86, 616 A.2d at 780 (quotation omitted).[2]

_____

[2] We have consistently rejected the notion, suggested by Justice Carroll's dissent, post, ¶¶ 42-44, that our analysis of whether a warrant is required under Article 11 allows for a balancing between the State's interest and individual privacy interests. As noted below, in Savva, we described the historical abuse of warrants that motivated the framers of the Vermont Constitution and explained that "a warrant requirement is not a starting point for deriving exceptions that balance citizens' interest in privacy against law enforcement's interest in expeditious searches. Rather, it is the balance reached by the constitutional drafters . . . ." 159 Vt. at 85-86, 616 A.2d at 780; see also Morris, 165 Vt. at 115, 680 A.2d at 93 ("Requiring advance judicial approval before subjecting persons to police searches represents a balance in which an individual's privacy interest outweighs the burdens on law enforcement in obtaining a warrant."). We have repeatedly acknowledged that the framework of our Article 11 analysis, in contrast to the Fourth Amendment, does not allow for balancing the interests of the State and individuals in the ordinary case involving searches for law enforcement purposes. See State v. Kane, 2017 VT 36, ¶ 33, __ Vt. __, 169 A.3d 762 (contrasting federal Fourth Amendment balancing test to Vermont's Article 11 caselaw, which only allows for balancing test if State can establish "special need" that supports departing from the warrant and probable-cause requirements); Medina, 2014 VT 69, ¶¶ 14-27 (recognizing that court can engage in balancing between State's interest and individual privacy interests in special subcategory of cases in which warrantless intrusion is incidental to state action in service of some "special need" other than to detect and enforce violations of law); State v. Bogert, 2013 VT 13A, ¶ 17, 197 Vt. 610, 109 A.3d 883 (recognizing that "[o]ur analysis under Article 11 of the Vermont Constitution follows a different path from the analysis under the Federal Constitution" in that

4

¶ 8.     The threshold question of whether police conduct amounts to a "search," thereby triggering the warrant requirement, is whether the area in question enjoys a reasonable expectation of privacy.  Bryant, 2008 VT 39, ¶ 11.  The reasonable expectation of privacy test is two-fold.  First, one must exhibit an actual, subjective expectation of privacy, and, second, the expectation must be objectively reasonable.  Id.; State v. Blow, 157 Vt. 513, 517, 602 A.2d 552, 555 (1991).  If the landowner enjoys no reasonable expectation of privacy, then the search in question is not really a "search" at all.  See, e.g., Kyllo v. United States, 533 U.S. 27, 32 (2001).

¶ 9.     Applying these principles, this Court has recognized that Vermont's Constitution establishes greater protection against search and seizure of "open fields" than the U.S.

under Vermont Constitution our courts may only engage in balancing to assess applicability of warrant requirement if State can establish that "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable"); State v. Berard, 154 Vt. 306, 310-11, 576 A.2d 118, 120-21 (1990) (declining to follow parallel federal law and "evolving federal standard" when interpreting Article 11, and holding that this Court "will abandon the warrant and probable-cause requirements, which constitute the standard of reasonableness for a government search that the Framers established, only in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impractical" (quotation and alternations omitted)).  These decisions reflect the reality that the State always has a strong interest in investigating crimes—the State's asserted interest in enforcing fish and game regulations is not unique or particularly compelling in that regard.  But the Article 11 analysis does not turn on a balancing of the strength of the State's interest with the privacy interests at stake.

Justice Carroll's dissent acknowledges this caselaw but then suggests that enforcing the fish and wildlife laws is a special need, and accordingly applies the kind of balancing analysis that is available only where the State intrusion supports a "special need."  But "special need" does not include law enforcement needs, even if a court thinks those particular law enforcement needs are very important.  Instead, it describes a particular kind of circumstance in which the intrusion on a protected interest is designed to promote some purpose other than law enforcement.  See, e.g., Bogert, 2013 VT 13A, ¶ 18 ("The need to supervise and promote offender rehabilitation, and the need to protect the public against identified risks of recidivism, are goals wholly apart from ordinary law enforcement, which may justify warrantless searches and seizures with respect to individuals under DOC supervision."); see also Medina, 2014 VT 69, ¶¶ 15, 48 (explaining that securing post-conviction DNA sampling helps identify persons at future crime scenes, identify missing persons, and deter recidivism are all purposes distinct from normal law enforcement activities and that court may only balance strength of State's need against privacy intrusion once State has proven special need beyond ordinary needs of law enforcement).  The dissent's suggestion that enforcing fish and wildlife laws is a "special need" cannot be reconciled with our caselaw defining "special needs."  To the extent that Justice Carroll's dissent relies on a purported balancing of the State's (law enforcement) interests and defendant's privacy interests, its analysis is squarely at odds with well-established Article 11 principles.

5

Constitution, requiring that law enforcement officers secure warrants before searching open fields when the landowner demonstrates an expectation of privacy. Kirchoff, 156 Vt. at 1, 587 A.2d at 988. In Kirchoff, this Court explored whether the Article 11 warrant requirement applies to searches of "open fields"—areas of property other than the home itself or that immediately surrounding the home. Id. The defendant lived on a remote tract of land in the town of Lincoln. He posted "no trespassing" signs around his property, including the entrance of his driveway.[3] And although he allowed friends and neighbors to ride bicycles on the property, he "took actions to keep strangers" away. Responding to a tip that the defendant was growing marijuana, law enforcement officials, acting without a warrant, entered his land through an adjacent property. They passed the "no trespassing" signs along the way and eventually came to a marijuana patch approximately 100 yards from the defendant's house.

¶ 10. On appeal from the trial court's denial of the defendant's motion to suppress the evidence, this Court rejected the "open fields" exception to the warrant requirement established under the U.S. Constitution. See Oliver v. United States, 466 U.S. 170, 184 (1984). We instead formulated a test under Article 11 "that a lawful possessor may claim privacy in 'open fields' . . . where indicia would lead a reasonable person to conclude that the area is private." Kirchoff, 156 Vt. at 10, 587 A.2d at 994. We noted the corollary that Article 11 does not protect areas in which the landowner has taken no steps to exclude the public. Id. The test is objective: the landowner must manifest some indicia—fence, barriers, "no trespassing" signs—that demonstrate to a reasonable person that the public is not welcome. Id. Considering "the extensive posting of the [defendant's] land," the Court concluded that the "defendant's intent to exclude the public was unequivocal" and ruled that any evidence gathered because of the search must be excluded. Id. at 14, 587 A.2d at 996.

---

[3] The postings specified that hunting and trapping activity was not allowed, and they were recorded with the town clerk in accordance with 10 V.S.A. § 5201.

¶ 11.    Since Kirchoff, this Court has reaffirmed that a landowner must signal an intent to exclude the public from "open fields" in order to maintain a constitutionally cognizable expectation of privacy.  See State v. Costin, 168 Vt. 175, 179, 720 A.2d 866, 869 (1998) ("The obvious import of these decisions is that this defendant has no reasonable expectation of privacy in the area in which he tended his marijuana garden because he took no steps to exclude the public."); State v. Hall, 168 Vt. 327, 328-30, 719 A.2d 435, 436-37 (1998) (upholding warrantless entry of defendant's property because "no signs were posted, nor were other methods used, to indicate that defendant sought to exclude the public from the woods adjacent to his yard"); State v. Rogers, 161 Vt. 236, 245-49, 638 A.2d 569, 574-76 (1993) (holding that since defendant's privacy claim was based on natural barriers to land rather than "change caused by defendant's actions," he enjoyed no Article 11 protection); State v. Chester, 156 Vt. 638, 638, 587 A.2d 1008, 1008-09 (1991) (mem.) (holding that because "there were no barriers to entry to indicate defendant's intent to exclude the public" warrantless entry was permitted).

## II.  Chapter II, § 67 and Vermont's Posting Statutes

¶ 12.    We conclude that the protections of the Vermont Constitution for hunting, trapping, and fishing, and the associated implementing statutes, do not diminish a landowner's expectation of privacy against warrantless intrusion and do not require a reframing or exception to the framework we established in Kirchoff.

¶ 13.    The State argues that despite the steps defendant concededly took to warn trespassers against entering his land, because he did not post his land in compliance with Vermont's statutes regulating posting against hunting, trapping, and fishing, the game warden was free to enter his land in the course of enforcing hunting laws.  The State cites Chapter II, § 67 of the Vermont Constitution, which states:

> The inhabitants of this State shall have liberty in seasonable times, to hunt and fowl on the lands they hold, and on other lands not inclosed, and in like manner to fish in all boatable and other waters (not private property) under proper regulations, to be made and provided by the General Assembly.

7

And the State explains that the Legislature has implemented this constitutional provision through 10 V.S.A. § 5201, which sets forth the requirements for posting land against hunting without permission. That statute allows landowners to maintain notices prohibiting others from shooting, trapping, or taking game, and/or from fishing. Section 5201(b) specifies that "[n]otices prohibiting the taking of game shall be erected upon or near the boundaries of lands to be affected with notices at each corner and not over 400 feet apart along the boundaries thereof," and shall be legible, dated each year, and "of a standard size and design as the Commissioner shall specify."[4] Compliance with this subsection renders the land "enclosed." Id. § 5201(d). In addition, the landowner must record the postings annually in the local town clerk's office. Id. § 5201(c). The State's argument follows two steps. First, because defendant did not comply with § 5201 by failing to specify in his signs that hunting was prohibited, and by failing to record the signs with his town clerk for that calendar year,[5] members of the public could legally enter his property in order to hunt,

---

[4] The Department of Fish and Wildife's regulation requires that the signs:

> (1) be not less than 8 ½" by 11";
> (2) have lettering and background of contrasting colors;
> (3) state that hunting, fishing or trapping or any combination of the three are prohibited or forbidden;
> (4) be dated each year;
> (5) be erected on or near the boundaries of the posted land or waters, not more than 400 feet apart, and at each corner of the boundaries of posted land;
> (6) be annually recorded at the town clerk's office in the town where the posted land or waters is located, on a form provided by the Fish & Wildlife Commissioner, with a copy retained and a copy provided to the Commissioner; and
> (7) shall not be considered void if other language is added to the sign that is not covered by section 5201, as long as a reasonable person would understand that hunting, fishing or trapping are prohibited or forbidden.

10 App. V.S.A. § 14.

[5] It is not clear that compliance with this annual recording requirement is essential to "enclosing" the land for the purposes of the statute, § 5201(d), or the applicable constitutional provision, ch. II, § 67, so the relevance of the apparent fact that defendant did not register any postings in his town clerk's office is not entirely clear. Although § 5201(b) authorizes the

8

notwithstanding his general notices against trespass. Second, because hunters could lawfully enter his property for hunting purposes, it follows that he had no reasonable expectation of privacy that would prevent game wardens seeking to enforce state fish and game laws from entering his property.

¶ 14. We need not address the first premise of the State's argument because we conclude that even if the State is correct that defendant's notices against trespass did not effectively exclude hunters from entering his open fields without permission, that would not change the standard we established in Kirchoff for assessing whether law enforcement may search open fields without a warrant.[6] We ground our conclusion on several considerations. First, in Kirchoff itself, we expressly acknowledged Ch. II, § 67 of the Vermont Constitution and expressly rejected any suggestion that that constitutional provision in any way qualified or limited our analysis of the applicability of the warrant requirement to open fields. Second, we note that, at most, the Vermont Constitution may create a limited right of entry under specified circumstances for limited purposes, not a global right of entry for all members of the public for any purpose. Even assuming this limited right of entry onto defendant's land, it does not follow that defendant has lost his reasonable expectation of privacy writ large, such that government agents can enter his property without a warrant. Third, notwithstanding the State's effort to limit the scope of its argument to warrantless entries by game wardens, its approach would render our analysis in Kirchoff and its progeny a virtual nullity. Finally, we decline the State's invitation to afford game wardens extra-constitutional privileges when it comes to warrantless intrusion on private land. We reject any argument that our analysis improperly stymies law enforcement efforts by game wardens.

---

Department of Fish and Wildlife Commissioner to adopt regulations concerning the size and design of compliant notices, it does not purport to authorize the commissioner to expand the statutory requirements for "enclosing" land.

[6] We assume the validity of the State's argument on this first point only for the purposes of analyzing the second step of the State's argument. We do not adopt the State's position as to the effect of § 67 and the posting statute.

9

¶ 15.    This Court was not oblivious to the Vermont Constitution's provisions concerning hunting when we established the test in <u>Kirchoff</u>.  In the context of our holding that a possessor of land may preserve a constitutionally protected interest in land outside the curtilage by "manifesting an intention to exclude the public by erecting barriers to entry, such as fences or by posting signs," we wrote the following:

> Vermont law allows persons to enter lands for certain purposes under certain conditions.  Chapter II, § 67, of the Vermont Constitution grants the people of this state the liberty "in seasonable times, to hunt and fowl on the lands they hold, and on other lands not inclosed . . . under proper regulations."  Furthermore, 10 V.S.A. § 5212 limits a landowner's liability in negligence when the owner "gratuitously gives another permission . . . " to enter upon unposted land for "recreational purposes," such as "hunting, fishing, trapping, hiking, gathering wildflowers or berries, birdwatching, horseback riding, picnicking, swimming, skiing, snowshoeing and similar activities."  These provisions evidence the state's policy of providing the public with certain privileges and liberties not permitted under the common law.  They evidence no intent, however, to limit the right of landowners to pursue their affairs free from unregulated intrusion by officials.

156 Vt. at 11-12, 587 A.2d at 995 (citations omitted).  In short, the very decision the State now seeks to qualify or reframe acknowledged that under the law people are allowed to enter lands for certain purposes—including hunting—and specifically rejected the suggestion that as a result possessors of land subject to such intrusions have a lessened expectation of privacy against governmental intrusion.  <u>Id</u>.   These considerations were integral to this Court's analysis in <u>Kirchoff</u>, and we essentially rejected the argument the State is now making.[7]

---

[7]  Justice Carroll's dissent is correct that the defendant in <u>Kirchoff</u> had in fact posted his property against hunting consistent with the statutory requirements for posting against hunting, so the case is factually distinguishable.  <u>Post</u>, ¶ 33.  But in rejecting the significance of our decision in <u>Kirchoff</u>, the dissent essentially dismisses our reasoning.  We expressly held that the warrant and probable-cause requirements in Article 11 apply "where indicia would lead a reasonable person to conclude that the area is private."  <u>Kirchoff</u>, 156 Vt. at 10, 587 A.2d at 994.  Even though the defendant in that case <u>had</u> posted against hunting consistent with the statute, we did not rely on that fact.  We instead explained, "Where the indicia, such as fences, barriers or 'no trespassing' signs reasonably indicate that strangers are not welcome on the land, the owner or occupant may reasonably expect privacy."  <u>Id</u>.

¶ 16.    We did so for good reason.  The impact of the posting statutes on a landowner's reasonable expectation of privacy is minimal.  Chapter II, § 67, as construed by the State, undermines private property rights.  See Cabot v. Thomas, 147 Vt. 207, 210, 514 A.2d 1021, 1037 (1986) (noting that issues raised by Vermont's constitutional provision regarding hunting "lie at the crosscurrents of two important concerns: the individual's desire for private enjoyment of privately owned land and the public's wish for sporting access to the forests, fields, and waterways of this state"); see also M. Sigmon, Note, Hunting and Posting on Private Land in America, 54 Duke L.J. 549, 568 (2004) ("The posting statutes create an obvious problem: they pit the rights of one group, hunters, against the rights of another group, landowners.").  Accordingly, Chapter II, § 67 is narrow; it does not purport to give license for any member of the public to enter another's land for any purpose.  That would profoundly undermine private property rights by eliminating the concept of trespass.  At most, Chapter II, § 67 provides a limited right of access to another's private property for narrow, specified purposes.  Law enforcement—even law enforcement related to hunting—is not among those narrow, specified purposes.

¶ 17.    Moreover, the statutory steps required to cut off that limited right of access through posting, see 10 V.S.A. § 5201, per the State's argument, are far more onerous than those required to put uninvited members of the general public, and law enforcement, on notice that they are not welcome on private property.  See 13 V.S.A. § 3705(a)(1)(C) (outlining notice requirements for criminal trespass).  If the State is right, then to effectively exclude a hunter from one's property, a landowner must not only post signs of the requisite size, color contrast, and content no more than 400 feet apart around the perimeter of the boundary, but must re-post, or at least re-date the signs annually and must record the fact of the posting in the town clerk's office every year.  For that reason, the legal tension here, if any, is not between Article 11 and Chapter II, § 67 of the Vermont Constitution; rather, it is between the constitutional protection against warrantless searches in Article 11 and the particular statutory posting requirements the Legislature has chosen to adopt in furtherance of § 67.  Based on the dissent's reasoning, it does not matter how onerous the posting

11

requirements are—if the Legislature required posting of chartreuse plastic signs every five feet and weekly registration with the town clerk to effectively post against hunting, the logic of the dissent is that failure to meet these requirements suggests a reduced reasonable expectation of privacy, no matter how clearly a property owner otherwise signals an intent to exclude all comers.

¶ 18.    It does not follow that a landowner who has effectively put strangers on notice that they are not welcome on the private property surrenders the corresponding reasonable expectation of privacy by failing to take the more burdensome specific steps required to cut off the narrower right of access afforded to hunters.[8]  See Rogers, 161 Vt. at 249, 638 A.2d at 576 ("Article 11 does not protect areas willingly exposed to the public." (quotation omitted)).  As we explained in Morris, in rejecting the suggestion that by placing garbage in opaque bags at curbside people forfeit their expectation of privacy in the bags' content, "[t]he Vermont Constitution does not require the residents of this state to employ extraordinary or unlawful means to keep government authorities from examining discarded private effects."  165 Vt. at 119, 680 A.2d at 96; see also People v. Cook, 710 P.2d 299, 305 (Cal. 1985) ("[T]he Constitution does not provide that one is open to governmental inspection by any and all means [the person] has failed to forestall.").  Defendant's failure to provide notice satisfying the statutory requirements for posting against hunters does not constitute willing exposure of his property to the public—or to law enforcement.

¶ 19.    Nor does the fact that some members of the public may come on to one's private land eliminate the reasonable expectation of privacy otherwise attached to that property.  See Bryant, 2008 VT 39, ¶ 28 (noting in context of aerial surveillance that "it simply does not follow

---

[8]    In addition, landowners who intend to exclude everyone, including hunters, may nonetheless reasonably opt not to post in conformity with the above posting statutes because hunting is otherwise proscribed or impracticable on their land.  Depending on the size and dimension of their property, they may effectively banish hunters from their property by posting a "safety zone" in lieu of the formal statutory and regulatory posting requirements noted above.  See 10 V.S.A. § 4710.  The accessibility, topography, or surroundings of their property may make hunting exceptionally difficult or undesirable.  It is not unreasonable in such circumstances to maintain an expectation of privacy after taking steps to clearly convey an intent to exclude the public from private land.

that whether a member of the public is abiding by the law in occupying a particular spot in the public airspace is an adequate test of whether governmental surveillance from that same spot is constitutional"); Morris, 165 Vt. at 123, 680 A.2d at 99 ("What a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.") (quotation omitted)); Cook, 710 P.2d at 304 ("[T]he fact that government officials or members of the civilian public may be expected, for one reason or another, to enter a place or see or hear activities within, does not necessarily preclude reasonable claims of privacy from intensive spying by police officers looking for evidence of a crime."); State v. Stanton, 490 P.2d 1274, 1279 (Or. Ct. App. 1971), overruled on other grounds by State v. Walle, 630 P.2d 377, 381 (Or. Ct. App. 1981) ("A person may not expect privacy in his open field or backyard as against children at play or parents looking for lost or tardy children. Yet he [or she] may subjectively expect and objectively be entitled to expect privacy as against police[] making a 'dragnet' search of a whole group of private fields or a whole neighborhood of backyards in the assumption that if they search long enough and far enough they will find some evidence of some crime.").

¶ 20.    A holding otherwise would swallow the rule that we announced in Kirchoff. Game wardens are law enforcement officers with full authority to enforce the broad spectrum of Vermont's laws. See 10 V.S.A. § 4198 (establishing that upon completion of specified training, "State game wardens . . . shall have the same law enforcement authority, duties, and powers as State Police, sheriffs, constables, and municipal police"). And, conversely, state police officers enforce hunting regulations and are vested with the same authority as game wardens. See 20 V.S.A. § 1915 ("State Police shall cooperate with game wardens in enforcing the fish and wildlife laws of the state and the laws enacted for the protection and conservation of forests, woodland, and other natural resources, and to this end all the powers now and hereafter conferred on game wardens shall be had and exercised by state police."). Although the State purports to argue for a narrow "game warden" exception to Article 11's warrant requirement, there is no principled rationale for distinguishing game wardens from other sworn law enforcement officers with respect

13

to whether they must get a warrant. Thus, if we accepted this logic, then notwithstanding our holding in Kirchoff, it would nullify constitutional privacy expectations for anyone other than those who scrupulously follow 10 V.S.A. § 5201.[9]

¶ 21. Nor are we convinced by the State's argument that game wardens enjoy special Article 11 consideration when it comes to the warrant requirement. The State cites cases from other states allowing game wardens to inspect hunting licenses and briefly detain hunters on public land without reasonable suspicion. See Elzey v. State, 519 S.E.2d 751, 755 (Ga. Ct. App. 1999) ("We believe . . . that the actions by wildlife law enforcement officers in . . . checking [hunting] licenses and identifications might be reasonable, even though such actions may be unreasonable outside the hunting context."); State v. Boyer, 2002 MT 33, ¶ 24, 42 P.3d 771 (noting that "no objectively reasonable expectation of privacy exists when a wildlife enforcement officer checks for hunting and fishing licenses in open season near game habitat, inquires about game taken, and requests to inspect game in the field").

¶ 22. However, the State has not provided authority (nor were we able to divine any) from another state that has adopted a similar rule to Kirchoff that allows a warrantless search of private land because the landowner, while adequately manifesting an intent for privacy against trespass generally, ignored the specific requirements of a hunting posting statute. The level of interference—and, therefore, the attendant reasonableness—in briefly detaining a hunter on public

---

[9] Nor does it make sense, as advocated by Justice Carroll's dissent, to predicate the presence or absence of a warrant requirement on the purpose for which the law enforcement officer seeks to enter private property effectively posted against trespass. Post, ¶ 46. Article 11 attempts to protect Vermont's citizens from unfettered governmental intrusion onto private land—essentially, the interest at stake is privacy. See Bryant, 2008 VT 39, ¶ 36 ("The overriding function of Article 11 is to protect personal privacy and dignity against unwarranted intrusion by the state."); Kirchoff, 156 Vt. at 8, 587 A.2d at 993 ("While generally there is not an expectation of privacy in unoccupied lands, such is not the case where the landowner has taken steps, such as fencing or posting, to indicate that privacy is exactly what is sought."). The intrusion on protected privacy interests is the same regardless of the specific offense a law enforcement officer hopes to uncover by entering private property without a warrant. The dissent cites no authority for its unconventional suggestion that the protections Article 11 provides for open fields posted in a way that gives notice that strangers are unwelcome hinges on the subjective aspirations of the law enforcement officer entering that property.

14

land to check a hunting license or to inquire about hunting activity is a far cry from allowing law enforcement to enter without probable cause and a warrant private land that has been posted against trespass. Notably, in Boyer, the Montana Supreme Court explained that the warden's brief seizure of the fisherman and his vessel was reasonable because the warden "did not disturb any personal property." 2002 MT 33, ¶ 33; see also State v. Bullock, 901 P.2d 61, 76-77 (Mont. 1995) (ruling that game warden's warrantless entry onto defendant's private wooded property posted with "no trespassing" signs violated Montana Constitution because "a person may have an expectation of privacy in an area of land that is beyond the curtilage which society of this State is willing to recognize as reasonable, and that where . . . 'No Trespassing,' or similar signs, or by some other means which indicates unmistakably that entry is not permitted, entry by law enforcement officers requires permission or a warrant" (quotation and alterations omitted)).

¶ 23. We reject the notion that if hunters are allowed to hunt on property, game wardens must necessarily be authorized to enter the property without a warrant. Even under the State's view, there are many circumstances in which a game warden cannot make a warrantless entry onto land on which individuals are hunting. If defendant in this case had posted his land against hunting in compliance with § 5201, even under the State's framework, the game warden could not enter without a warrant. That would be true even if defendant was hunting there, and even if defendant gave permission to dozens of his friends to do the same. It simply isn't the case that wherever hunting occurs, game wardens are necessarily authorized to make a warrantless (and suspicionless) entry, or, as Justice Eaton's dissent suggests, that "regulation-free hunting and fishing zones" are anomalous. Post, ¶ 28. Access to private property by hunters and access to that same property by game wardens do not necessarily go hand in hand.

¶ 24. We recognize that enforcement of Vermont's hunting, trapping, and fishing laws would be relatively easier if we adopted the exception to the Article 11 warrant requirement advocated by the State. But "[h]ow often we hear the clamor of the moment that Article 11 is used as a barrier to effective law enforcement, and how often people forget that Article 11 is the balance

15

struck between liberty for the individual (privacy and a sense of security) and the convenience of unchecked crime detection." Savva, 159 Vt. at 91-92, 616 A.2d at 783. Article 11 strikes a balance by providing that when possessors of land effectively communicate an intent to preserve the privacy of their open lands, their property will not be subject to warrantless search.[10] If police officers, including game wardens, want to enter private property to investigate hunting violations, they can ask a lawful possessor's permission or get a warrant based on probable cause.

III. The Trial Court's Application of Kirchoff

¶ 25. Finally, we hold that defendant effectively communicated his expectation of privacy—and thus met the Kirchoff test—whether the warden observed the postings or not. As noted above, Kirchoff established that if a person objectively demonstrates an intent to maintain the privacy of open fields, that triggers Article 11's warrant requirement. The trial court concluded that by posting approximately thirty signs roughly 100 feet apart around the perimeter of his property, and by placing a gate with "no trespassing" signs at the entrance to the main thoroughfare onto his property, defendant objectively signaled to the outside world that strangers were not welcome.

¶ 26. Accordingly, contrary to the State's argument, the trial court did not improperly rely on the topography of the land or the presence of vegetation in concluding that defendant had established a reasonable expectation of privacy. See Rogers, 161 Vt. at 247-49, 638 A.2d at 576 (upholding warrantless search where defendant took no affirmative steps to prevent public from land and instead relied on natural wooded barriers). The trial court described the topography of the land and the game warden's circuitous approach to the property up a steep grade through thick brush to explain why he did not have the vantage point of a "reasonable person," not to conclude

---

[10] We do not address the potential applicability of other exceptions to the warrant requirement that may apply in some cases. See, e.g., State v. Neil, 2008 VT 79, ¶ 10, 184 Vt. 243, 958 A.2d 1173 (recognizing exigent-circumstances exception to warrant requirement); State v. Trudeau, 165 Vt. 355, 362, 683 A.2d 725, 729 (1996) (recognizing plain-view exception to warrant requirement).

that the topography and brush themselves sufficed to create a reasonable expectation of privacy. See State v. Romain, 1999 MT 161, ¶¶ 6, 18, 983 P.2d 322 (holding that defendant's "expectation of privacy was reasonable" and "the officers' entry onto [his] property was unlawful" even though officers did not see "no trespassing" signs); People v. Malatesta, 718 N.Y.S.2d 120, 125 (Sup. Ct. 1999) (suppressing evidence of warrantless intrusion onto property marked with "no trespassing" signs though law enforcement "either failed to notice the signs or chose to ignore them").

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 27.    **EATON, J., dissenting.**   In my view, when the hunting and fishing public is not excluded from private lands because the landowner has not taken the necessary steps to exclude them, the landowner has no reasonable expectation of privacy with regard to those activities. This lack of a privacy expectation by the landowner extends to law enforcement officers making entry to enforce the laws pertaining to hunting and fishing. The landowner here had a way to effectively exclude all members of the general public by proper posting and did not do so. He should not now be heard to assert an expectation of privacy concerning fishing and hunting law enforcement when he had none concerning entry by the public to engage in those activities on his land.

¶ 28.    The majority's position results in a rule that effectively states, "All are welcome to fish and hunt on these lands, but those enforcing the laws pertaining thereto stay out." This result is not constitutionally mandated under Kirchoff and, in my view, is extremely poor policy. State v. Kirchoff, 156 Vt. 1, 10, 587 A.2d 988, 994 (1991). The importance of Vermonters' right to hunt and fish was of sufficient magnitude to warrant a constitutional provision concerning it. At the same time, that constitutional provision recognized the Legislature's right to regulate those activities. Carving out what amounts to regulation-free hunting and fishing zones, as is the

17

practical result of the majority's decision, protects no expectation of privacy and serves only to frustrate law enforcement charged with protecting our time-honored rights to hunt and fish.

¶ 29.  Accordingly, I dissent.

¶ 30.  I am authorized to state that Justice Carroll joins this dissent.

_____

Associate Justice

¶ 31.  **CARROLL, J., dissenting.**  In broad terms, this case asks whether under Vermont law there are circumstances under which landowners may have a reasonable expectation of privacy regarding entry onto their land that runs to some entrants, but not others, and which, as such, forecloses the warrantless entry of law enforcement officers for some, but not necessarily all, law enforcement purposes.  Unlike the majority, I think that our Constitution, statutes, and caselaw require such a conclusion.  For this reason, I respectfully dissent.

¶ 32.  At the outset, it bears emphasizing that the State asks us for a limited holding.  The State does not seek to reframe or create an exception to the rule established in Kirchoff.  See ante, ¶ 12.  Even if we decided this case in the State's favor, Vermont law would still require a warrant for general law enforcement entry onto open fields when the landowner has taken sufficient action to indicate that the area in question is private.  See State v. Kirchoff, 156 Vt. 1, 10, 587 A.2d 988, 994 (1991) ("Where the indicia, such as fences, barriers or 'no trespassing' signs reasonably indicate that strangers are not welcome on the land, the owner or occupant may reasonably expect privacy.").  Rather, the State asks us to address a question that Kirchoff left open—is a game warden permitted warrantless entry for the sole purpose of investigating fish and game violations when a landowner posts standard no trespassing signs but does not comply with the statutory requirements needed to keep hunters and others seeking to take wild fish and game off privately owned property?

18

¶ 33.    In Kirchoff we did not identify the precise indicia required to find that a landowner had a reasonable expectation of privacy as to all types of entrants.  The Kirchoff landowner had posted his land in accordance with 10 V.S.A. § 5201, and thus unequivocally had a reasonable expectation of privacy relative to all possible entrants, including those who would otherwise be allowed to enter under Chapter II, § 67 of the Vermont Constitution.  Though we identified no trespassing signs as a means to communicate an expectation of privacy, the no trespassing signs at issue in Kirchoff—which we held did, in fact, communicate an expectation of privacy as to all entrants—were the type of no trespassing signs required under 10 V.S.A. § 5201.  As we explained in Kirchoff: "There will undoubtedly arise cases where the question of the legitimacy of a possessor's expectation of privacy in a particular area is a close one.  In this case, we need not explore nice distinctions."  Id. at 14, 587 A.2d at 996.  The case before us now is such a case, and here we do need to explore the "nice distinctions" left aside in Kirchoff.

¶ 34.    The question in this case is not one of fact—whether the landowner put in place sufficient tangible indications such that law enforcement should have known a warrant was required for entry—but one of law—whether posting against general trespassing, but not against entry for purposes of hunting or fishing, is sufficiently indicative of a landowner's reasonable expectation of privacy to preclude all law enforcement entry regardless of the purpose of the entry. This Court has never considered this legal question.  To answer this question in the negative places undue importance on Kirchoff's reference to Chapter II, § 67 of the Vermont Constitution, which the majority seems to consider as essentially dispositive of the State's argument.  See ante, ¶ 15. The discussion in Kirchoff is brief, and simply notes that the constitutional provision "evidence[s] the state's policy of providing the public with certain privileges and liberties not permitted under the common law," but that this does not, in turn, "limit the right of landowners to pursue their affairs free from unregulated intrusion by officials."  Kirchoff, 156 Vt. at 12, 587 A.2d at 995. This language simply means that Chapter II, § 67 cuts away a narrow slice of the landowner's general common law right to exclude, without obliterating that right altogether, though a

19

landowner can still exclude all entrants by acting in compliance with 10 V.S.A. § 5201. Thus, the landowner does not necessarily have a presumed right to exclude in all instances, but instead has a conditional right to exclude, limited by the constitutional provision permitting entry for specific purposes during particular times.

¶ 35. I think it is a stretch to say that this language stands for the proposition that we "specifically rejected the suggestion that as a result possessors of land subject to [hunting and fishing] intrusions have a lessened expectation of privacy against governmental intrusion," or that "[t]hese considerations were integral to this Court's analysis in Kirchoff, and we essentially rejected the argument the State is now making." Ante, ¶ 15. Kirchoff's holding is bound by its facts, and it is clear to me that we did not consider in Kirchoff the argument that the State raises here. Our cases have explored the landowner's reasonable expectation of privacy when the landowner, as in Kirchoff, has posted land in a sufficient manner to exclude all. Our cases have likewise explored landowners' reasonable expectations of privacy when the landowners, as in the cases the majority cites as following the Kirchoff rule, see ante, ¶ 11, have taken no action to indicate that their land is private. Our cases have not explored the gray area between these two extremes, which is precisely what we are asked to do in this case.

¶ 36. Addressing the issue before us in this case begins with consideration of Chapter II, § 67 of the Vermont Constitution. That section provides:

> The inhabitants of this State shall have liberty in seasonable times, to hunt and fowl on the lands they hold, and on other lands not inclosed, and in like manner to fish in all boatable and other waters (not private property) under proper regulations, to be made and provided by the General Assembly.

Vt. Const. ch. II, § 67. This provision reserves a right for Vermonters to access privately held lands for the purposes of taking fish and game under regulations promulgated by the Commissioner of Fish and Wildlife as long as those lands are not "inclosed." See 10 V.S.A. § 4082(a) (delegating authority to Fish and Wildlife Board to promulgate rules "for the regulation of fish and wild game and the taking thereof," which "shall be designed to maintain the best health, population, and

20

utilization levels of the regulated species and of other necessary or desirable species which are ecologically related to the regulated species").

¶ 37. Land is "inclosed" when it is posted in accordance with 10 V.S.A. § 5201, which provides:

> An owner . . . who desires to protect his or her land or waters over which he or she has exclusive control, may maintain notices stating that:
>   (A) the shooting, trapping, or taking of game or wild animals is prohibited or is by permission only;
>   (B) fishing or the taking of fish is prohibited or is by permission only;
>   (C) fishing, hunting, trapping, and taking of wild animals and fish are prohibited or are by permission only.

Id. § 5201(a)(1); id. § 5201(d) ("Land posted as provided [in this section] shall be enclosed land for the purposes herein."). The statute thus sets out a means by which landowners may keep hunters, anglers, and others seeking to take wild game from their land—with the result that a landowner may not keep such entrants from their land except by following the statutory requirements. Thus, those seeking to take game on private land are presumed to be permitted entry for that purpose so long as their entry complies with state regulation of the taking in question. Accordingly, we have held that a defendant who entered unenclosed land for the purpose of hunting wild game did not commit trespass as, "[t]he land not being enclosed, the defendant was exercising the right guaranteed him by the Constitution." Payne v. Gould, 74 Vt. 208, 210-11, 52 A. 421, 422 (1902); see also Cabot v. Thomas, 147 Vt. 207, 213-14, 514 A.2d 1034, 1038 (1986) (stating "[i]f landowners fail to take adequate measures to enclose their lands, then individuals who hunt there without first seeking permission would not normally be trespassers" and holding defendants trespassed because they entered land posted in compliance with 10 V.S.A. § 5201).

¶ 38. Chapter II, § 67 is contrary to the general understanding of private property rights. See ante, ¶ 16. This section effectively carves out a narrow exception to the landowner's right to exclude—a right that is typically assumed to be part of a private property owner's bundle of rights.

But our Constitution's framers etched this carve-out deliberately. As we explained in Cabot v. Thomas:

> In the colonial period, residents of the New Hampshire grants (what was later to be Vermont) were well aware of the history of abuses that had occurred in England under authority of fish and game laws: "They were then smarting under the oppression and inequalities of the English system under which individual development among the common people was impeded and often prevented, and the rights and enjoyments of the many were subjected to the pleasure of a favored few. Among the instrumentalities used to bring about this undesirable condition of life, were the iniquitous fish and game laws of England, enacted by the ruling class for their own enjoyment, and which led to a system under which the catching of a fish or the killing of a rabbit was deemed of more consequence than the happiness, liberty or life of a human being."

147 Vt. at 211, 514 A.2d at 1037 (quoting New England Trout & Salmon Club v. Mather, 68 Vt. 338, 353, 35 A. 323, 328 (1896) (Thompson, J., dissenting)). Chapter II, § 67 was adopted to stave off a similar system in Vermont and, as such, this provision serves as a balance between the rights of private landowners and the rights of the broader society to, in this case, take wild game and fish. Id. (stating Chapter II, § 67 is Vermont's "response to the sometimes conflicting concerns of the individual and the larger group of society" and this section "is an accommodation of competing goals").

¶ 39. As explained above, I do not read Kirchoff to have answered the question in this case. I also do not believe the effect of the Constitution can be doubted—the language of § 67, as well as our caselaw, makes clear that the public is allowed entry under this provision for limited purposes. In effect, Chapter II, § 67 grants a general public easement that a landowner may opt out of by complying with 10 V.S.A. § 5201. Consequently, I am not persuaded by the cases the majority cites in support of the idea that even though some members of the public may enter a property, the property owner nonetheless maintains a reasonable expectation of privacy as to all other classes of individuals. See ante, ¶ 19. For example, the majority cites State v. Morris for the rule that "[w]hat a person 'seeks to preserve as private, even in an area accessible to the public,

22

may be constitutionally protected.' " 165 Vt. 111, 123, 680 A.2d 90, 98 (1996) (quoting Katz v. United States, 389 U.S. 347, 351-52 (1967)). This rule is good law, but it is inapposite in this case. Chapter II, § 67 specifically grants a right of entry to the public onto privately held, unenclosed lands. Thus, not only is a property not exclusively private, but a landowner does not "seek[] to preserve as private" their property unless the property is posted in accordance with 10 V.S.A. § 5201. Id. (quotation omitted).

¶ 40. Moreover, the Constitution and posting statutes are important in this case for two primary reasons. First, as the majority notes, "[t]he reasonable expectation of privacy test is two-fold. First, one must exhibit an actual, subjective expectation of privacy, and, second, the expectation must be objectively reasonable." Ante, ¶ 8. In Kirchoff, we rejected the U.S. Supreme Court's rationale in Oliver v. United States, 466 U.S. 170 (1984), in part because that Court's conclusion that society was not prepared to recognize an expectation of privacy in land beyond the curtilage was "bold and unsupported." Kirchoff, 156 Vt. at 9, 587 A.2d at 993-94. We cited 13 V.S.A. § 3705, Vermont's criminal trespass statute, and explained that "the fact that society may adjudge one who trespasses on such lands a criminal belie[d] the claim" made in Oliver. Kirchoff, 156 Vt. at 9, 587 A.2d at 993-94; 13 V.S.A. § 3705(a) (stating person shall be imprisoned or fined "if, without legal authority or the consent of the person in lawful possession, he or she enters or remains on any land or in any place as to which notice against trespass is given"); see also State v. Bryant, 2008 VT 39, ¶ 27, 183 Vt. 355, 950 A.2d 467 ("The legitimacy of an individual's expectation of privacy is a broad question of private subjective expectations and public norms." (quotation omitted)). We further pointed out that law enforcement and courts were "accustomed to enforcing the law against trespass; deciding whether a search intrudes upon protected Article 11 interests will in most cases be no more arduous." Kirchoff, 156 Vt. at 9-10; 587 A.2d at 994 (citation omitted).

¶ 41. This reasoning implies that statute can provide a metric by which social norms may be measured and, more importantly for this case, that where an entrant could be charged with

23

trespass, social norms support the objective prong of the reasonable expectation of privacy test. This is relevant here for the reasons already explained—that is, entry onto unenclosed private property for the purpose of taking wild game, even property posted with standard no trespassing signs, is not generally trespassing. See Cabot, 147 Vt. at 213-14, 514 A.2d at 1038; Payne, 74 Vt. at 210-11, 52 A. at 422. It is questionable whether the objective inquiry in the reasonable expectation of privacy test is satisfied here where our Constitution reserves a right of entry onto private lands for persons engaged in taking wild fish and game and defendant took no action to exclude those engaged in the activity. And if the objective prong of the reasonable expectation of privacy test is not met, then the test in general is not met, and a warrant is not required for law enforcement entry.

¶ 42.　Second, the particular interest of the State in a given case should be considered. We have held that it is improper to consider the balance between public and private interests under Article 11 unless the State can demonstrate there are "exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirements impracticable." State v. Medina, 2014 VT 69, ¶ 14, 197 Vt. 63, 102 A.3d 661 (quotation omitted). This is because, as the majority recognizes, under Article 11 the warrant requirement reflects " 'the balance reached by the constitutional drafters, a balance in which the individual's interest in privacy outweighs the burdens imposed on law enforcement, such that those subjected to searches must be protected by advance judicial approval.' " Ante, ¶ 7 (quoting State v. Savva, 159 Vt. 75, 85-86, 616 A.2d 774, 780 (1991)). However, we have employed this "special needs" framework in cases in which we have recognized that a reasonable expectation of privacy exists in the first instance. See State v. Kane, 2017 VT 36, ¶¶ 32-40 ,__Vt. __, 169 A.3d 762 (placing GPS device on body of probationer intrudes upon expectation of privacy albeit one reduced by status as probationer); Medina, 2014 VT 69, ¶ 13 (holding person has expectation of privacy in oral cavity and DNA); State v. Bogert, 2013 VT 13A, ¶ 20, 197 Vt. 610, 109 A.3d 883 (finding defendant's privacy interests were "significantly compromised" by probation condition

24

authorizing probation officer to search defendant's computer). As explained above, I do not think that a landowner has a reasonable expectation of privacy under Chapter II, § 67, unless the landowner has posted in accordance with 10 V.S.A. § 5201. But even if I could read our caselaw to permit finding a reasonable expectation of privacy as to all entrants where a landowner has not barred entry by those seeking to take wild game, I do think that here there are "special needs" beyond the needs of law enforcement. For that reason, I would consider the State's interest in this case.

¶ 43. Here, the State's interest is the protection of Vermont's wildlife by means of enforcement of state regulations regarding the taking of wild game. Statute provides that:

> As provided by Chapter II, § 67 of the Constitution of the State of Vermont, the fish and wildlife of Vermont are held in trust by the State for the benefit of the citizens of Vermont and shall not be reduced to private ownership. The State of Vermont, in its sovereign capacity as a trustee for the citizens of the State, shall have ownership, jurisdiction, and control of all of the fish and wildlife of Vermont.
>
> . . .
>
> The protection, propagation control, management, and conservation of fish, wildlife, and fur-bearing animals in this State are in the interest of the public welfare. The State, through the Commissioner of Fish and Wildlife, shall safeguard the fish, wildlife, and fur-bearing animals of the State for the people of the State, and the State shall fulfill this duty with a constant and continual vigilance.

10 V.S.A. § 4081(a). This language includes two salient points. First, the wildlife protected by fish and game regulations, including both "regulated species" and "other necessary or desirable species which are ecologically related to the regulated species," is the property of the people of the State of Vermont, not the property of the landowner on whose land the wildlife is found. Id. § 4082(a); see also State v. Theriault, 70 Vt. 617, 622, 41 A. 1030, 1031 (1898) (stating fish are "the common property of the public," from which "the owner of the soil over which the non-boatable stream flows has the right to appropriate such as he may capture and retain; but this right of capture and appropriation is subject to regulation and control by the representatives of the

25

people, so that there shall continue to be a common property"). Second, the purpose of enforcement of fish and game regulations is the preservation of wildlife held in the public trust. We have explained that "[t]he State, the representative of the people, the common owner of all things ferae naturae, not only has the right, but is under a duty, to preserve and increase such common property." Theriault, 70 Vt. at 622, 41 A. at 1032. Thus, the relevant interest of the State in this case is not simply the interest of the State in having its rules and regulations followed, or a generalized law enforcement interest—it is the interest of the people of the State of Vermont in preserving the publicly held wildlife within the state.

¶ 44. That interest is served by the enforcement of fish and game regulations, precisely the action that the State asks us to permit in this case. In essence, the State seeks a balance—matching the public's right to take game on private, unenclosed property with law enforcement's right of warrantless entry onto land used by the public for the taking of game. In other words, the State seeks a rule recognizing that when a landowner has no reasonable expectation of privacy as to a given segment of the public, law enforcement efforts specifically directed at regulating the action of that segment of the public should be permitted without a warrant.

¶ 45. This is a simple rule, but one best explained in three parts. First, the Kirchoff rule: when a landowner posts property in accordance with 10 V.S.A. § 5201, clearly indicating that entry for any purpose is prohibited, law enforcement, including game wardens, may not enter the posted property without first obtaining a warrant. Second, the rule at play in this case: when a landowner posts property against trespassing in general but does not post in accordance with 10 V.S.A. § 5201, such that those seeking to take wild fish and game under the guaranteed constitutional right of Chapter II, § 67 may enter but all other entry is prohibited, law enforcement investigating fish and game violations may enter without a warrant for purposes of investigation, but other warrantless entry is not permitted. And third, the rule of the cases cited by the majority as following Kirchoff: when a landowner does not post their property or take any other action to

26

indicate that the land in question is private, law enforcement may enter without a warrant. Such a rule is consistent with Chapter II, § 67 and our caselaw applying Article 11.

¶ 46. Unlike the majority, I see no danger in permitting game wardens access in this way. I do not dispute that game wardens have the same authority as any other law enforcement officers, or that the reverse is likewise true. See ante, ¶ 20. But that is beside the point. It is the purpose of the law enforcement entry onto the property that is at issue—not the title of the officer. In Kirchoff, we placed the burden of proving the constitutionality of a warrantless entry onto open fields squarely on the State: "[W]e view government searches of a person's land as presumptively implicating Article 11, and consequently the State has the burden of proving that such a search does not violate Article 11." Kirchoff, 156 Vt. at 13, 587 A.2d at 996. Deciding this case in the State's favor would not change this equation, and the State would still bear the burden of showing, specifically, that a landowner had not posted land in accord with 10 V.S.A. § 5201.

¶ 47. The State would also bear the burden of proving that a game warden's entry onto a particular piece of property was for the purpose of detecting fish and game violations. It makes sense to limit a warden's entry for this purpose because the lack of a reasonable expectation of privacy itself is based on the foreseeability of the State's need to enforce fish and game laws. Requiring the State to prove that an entry was for this investigatory purpose ensures that the search is narrowly tailored to fit the circumstances of cases such as this.

¶ 48. Chapter II, § 67 grants Vermonters the right to take wild fish and game on unenclosed, private property "under proper regulations, to be made and provided by the General Assembly." The Constitution does not grant Vermonters unfettered access to unenclosed, private property—access, and any taking of wild fish and game, must be in accordance with statute and regulations adopted pursuant to 10 V.S.A. § 4082(a), which delegates rulemaking authority to the Fish and Wildlife Board. I take this constitutional reference to the state's regulatory authority to impose a corollary duty on the state—to duly regulate the taking of wild fish and game and to

27

enforce such regulations. Such regulation is in the interest of the public, insofar as it is beneficial to the public trust in Vermont's wildlife.

> Fish themselves are ferae naturae, the common property of the public, or of the state, in this country. From this common property, the owner of the soil over which the non-boatable stream flows has the right to appropriate such as he may capture and retain; but this right of capture and appropriation is subject to regulation and control by the representatives of the people, so that there shall continue to be a common property. The preservation of the common property, and its increase by the introduction of new and better species of fish, is not a taking away of the right of the owner of land on the stream to appropriate therefrom, but a preservation or enlargement of such right. The State, the representative of the people, the common owner of all things ferae naturae, not only has the right, but is under a duty, to preserve and increase such common property.

Theriault, 70 Vt. at 622, 41 A. at 1032. Given that this regulatory mandate is constitutional, and that the ownership of wildlife is placed in common and with the public writ large, I believe that a rule granting the State the ability to enforce fish and game regulations where the public is, in fact, permitted to hunt and fish is simple logic.

¶ 49. Such a rule would not be challenging to implement. This is no different than the burden that the State typically bears in a search premised on consent. See State v. Allis, 2017 VT 96, ¶ 10, __ Vt. __, 178 A.3d 993 ("When the State seeks admission of evidence obtained during a search based on consent, the State bears the burden of demonstrating that someone authorized to consent did, in fact, voluntarily give such consent."). Consideration of whether consent was properly given is a totality analysis, in which a court considers the record evidence as a whole, including the testimony, if any, of the law enforcement officers involved. State v. Sprague, 2003 VT 20, ¶ 28, 175 Vt. 123, 824 A.2d 539. Courts are thus accustomed to such evaluations, and a similar determination—directed at whether a game warden entered a property for the purpose of detecting fish and game violations—presents no bar to adoption of a limited rule permitting such entry onto unenclosed, private land.

¶ 50. While we could debate the continued value of Chapter II, § 67 in a modern society, which relies less on subsistence hunting and fishing than colonial America, that is a policy

28

determination more properly before the Legislature and people of Vermont than this Court. As such, we need to leave aside our own sense of the value of these provisions, including any sense that the burden of the posting statute is so "onerous" as to make it an unreasonable bar by which to measure a landowner's expectation of privacy. See ante, ¶ 17. Vermont's Constitution grants the public a right to hunt and fish on unenclosed, private land, statute defines enclosure for purposes of that constitutional provision, and I do not believe that the rule the State seeks in this case is inconsistent with Article 11. Rather, I see the rule at issue here as a straightforward accommodation of dual constitutional dictates; on one hand, protecting the individual property owner's right to be free from unwelcome governmental intrusion, and on the other, preserving Vermonters' continuing stake in the wild resources of our state. For these reasons, I respectfully dissent.

¶ 51. I am authorized to state that Justice Eaton joins this dissent.

_____

Associate Justice

29